Willis Albert **WEST** as Personal Representative of the Estate of Shannon Deanna West, Demetra Ann Clifton, individually, and Willis Albert West, individually, Appellants,

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. S–1877.

Supreme Court of Alaska.

May 13, 1988.

Rehearing Denied June 1, 1988.

---

**13.** AMC 3.30.176, *supra* note 6.

**14.** "[S]ubstantial compliance involves conduct which falls short of strict compliance with the statutory ... requirements, but which affords ... the same protection that strict compliance would offer." *Jones v. Short*, 696 P.2d 665, 667 n. 10 (Alaska 1985).

Don C. Bauermeister, Law Offices of Laurel J. Peterson, P.C., Anchorage, for appellants.

Burton C. Biss, Biss and Holmes, Wasilla, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This case arises out of a fatal collision between a fire department vehicle and a pedestrial, Shannon West. A jury found the defendant, the Municipality of Anchorage, free of negligence in Shannon's death.

The plaintiffs, now the appellants, argue that the trial court erred in allowing the jury to decide whether the speed limit was posted; they contend that it should have been decided as a matter of law. We conclude that the question of whether the speed limit was posted at the place the accident occurred was a proper question for jury determination. Thus, we find no error and affirm the jury verdict.[1]

On March 19, 1984, Samuel Bailey, a battalion chief for the Anchorage Municipal Fire Department, was driving a fire truck towards the fire station on McRae Road. Proceeding west on Spenard Road, Bailey entered the right turn only lane and then executed a gradual turn onto McRae, which led off in a north-westerly direction.[2] He was traveling at about 30 miles per hour. Bailey saw a group of teenagers running on the right hand side of his vehicle. Then he saw what he described as a blur moving towards him on his left. Shannon West was running from the southbound lane of McRae, across a triangular median and into the northbound lane in an effort to reach her friends on the opposite side of the road. Bailey slammed on his brakes but was unable to avoid hitting Shannon. She died of severe head injuries several days later.

In the ensuing wrongful death action against the municipality, a jury trial was conducted. At the close of the evidence, appellants moved for a directed verdict, arguing that Bailey had been negligent per se because he was traveling ten miles per hour over the speed limit. The superior court denied the motion, stating that the speed limit determination presented a genuine issue of fact which needed to be resolved by the jury. The jury returned a special verdict finding that Bailey had not been negligent, and thus that the municipality was not liable. The Wests' subsequent motions for judgment notwithstanding the verdict and a new trial were denied.

1. We also find that the Wests' other arguments, that the evidence establishes negligence as a matter of law and that the court improperly refused to instruct the jury that a driver whose vision is obstructed by the sun must slow down or stop, lack merit.

2. A diagram of the intersection as it existed in 1984 is attached as an appendix. We note that the street configurations have since been altered, so that the intersection looks quite different today.

The parties agree that Bailey was traveling at about 30 m.p.h. at the time of the accident, and that Bailey must be found negligent if this speed was in excess of the legal speed limit. The Wests contend that the maximum speed limit at the point of the accident was 20 m.p.h., the state speed limit established for business districts that are not otherwise posted.[3] The municipality argues that the posted limit of 35 m.p.h. on Spenard Road controlled. The court instructed the jury that the speed limit for this business district was 20 m.p.h. *unless otherwise posted.* The instruction allowed the jury to determine whether the road was "otherwise posted" as a matter of fact. The Wests claim that the speed limit at the scene of the accident was 20 m.p.h. as a matter of law, and that the denial of their requested jury instruction was prejudicial error.

In *Bailey v. Lenord,* 625 P.2d 849, 853 (Alaska 1981), we recognized that the speed limits set by state law will control municipal roadways, unless a different limit is adopted by the municipality and made effective by posting a sign. *See* 13 AAC 02.280(a).[4] In *Bailey,* there were no posted signs giving notice of the alleged municipal speed limit in the vicinity of the accident, and we therefore found that the state limit controlled.

In this case, the municipality posted a sign giving notice of a 35 m.p.h. speed limit on Spenard Road. Although the sign was located on Spenard Road, it was at a point well beyond the beginning of the "right turn only" turn-off lane for McRae Road. This speed limit sign was less than a block from the McRae turn-off and within clear view of it. The question is whether this notice controlled the northwesterly fork for McRae as well as Spenard Road.

The Wests contend that since the 35 m.p.h. speed limit sign was posted on Spenard Road before McRae Road separated to the northwest, McRae, as a matter of law, was not "otherwise posted," and the speed limit was 20 m.p.h. They argue that a motorist who turns onto an unposted street must assume that the speed limit there is the one dictated by state law. The municipality, however, argues that the place where the accident occurred *was* "otherwise posted" at 35 m.p.h.; the sign was posted on Spenard Road after the right-turn lane was dedicated, and the posting therefore remained effective until the character of the district changed or until there was a different limit posted.

We find relevant the fact that 13 AAC 02.275(b) specifically sets speed limits *unless otherwise posted;* this regulation does *not,* for example, set limits "unless otherwise provided by law." In our view, the provision is aimed at preventing unfair penalization of drivers who comply with posted signs. Thus, we believe that the question of whether the speed limit at the point of the accident was "otherwise posted" was a factual determination properly given to the jury to decide in accordance with the circumstances of the case.

In this case, given the exit's design and the placement of the speed limit signs on Spenard Road, reasonable people could differ as to whether the 35 m.p.h. sign applied to the McRae Road turn-off. This is not a situation where Bailey made a ninety degree turn onto another street, or where he

---

**3.** 13 AAC 02.275(b) (eff. before 7/28/59; am. 6/28/79) provides in part:

[T]he limits specified in this subsection are the maximum lawful speeds throughout the state, ... *unless otherwise posted:*

. . . .

(2) 20 miles per hour in a business district;

. . . .

(Emphasis added).

**4.** 13 AAC 02.280(a) (eff. before 7/28/59; am. 6/28/79) provides:

When the Department of Transportation and Public Facilities with the assistance of the department, or a municipality, in their respective jurisdictions and consistent with AS 28.-01.010, determines upon the basis of an engineering and traffic investigation that a maximum speed prescribed in sec. 275(b) of this chapter is greater or lesser than is reasonable or safe under the conditions found to exist at an intersection, or an arterial street, or at any other place or part of the state or municipal highway system, the respective authority may determine a reasonable and safe maximum limit at the location. The maximum speed limit is effective when signs giving notice of the maximum limit are erected.

turned onto a street whose character indicated that a speed change was required. Rather, the 35 m.p.h. speed limit sign was posted on Spenard *beyond* the point where the right lane became a right-turn-only lane, and that lane gradually separated from Spenard Road.

We conclude that the design of the McRae/Spenard intersection, and the placement of the 35 m.p.h. speed limit sign on Spenard Road immediately prior to the McRae Road turn-off, could lead reasonable people to disagree as to whether the McRae exit was "posted." It was proper for the court to instruct the jury that the speed limit on that portion of McRae was 20 m.p.h. unless otherwise posted. In finding Bailey not negligent, the jury apparently found, as reasonable people might, that the speed limit was "posted" at 35 m.p.h. We hold that there was no error, and, therefore, AFFIRM.

MATTHEWS, C.J., with whom COMPTON, J., joins dissenting.

APPENDIX

Aerial Photograph of Intersection of Spenard Road and McRae Road. Taken September 2, 1984

MATTHEWS, Chief Justice, joined by COMPTON, Justice, dissenting.

What the speed limit is on a given street is a question of law. *Bailey v. Lenord,* 625 P.2d 849, 853 (Alaska 1981). Speed limit signs are applicable only to the street on which they are posted, unless they indicate otherwise. Two examples of signs which govern not only the street on which they are posted, but streets egressing from the posted street are set forth in the Manual on Uniform Traffic Control Devices (1978).[1] These signs are clearly marked "exit" and "ramp." The 35 mph speed limit sign which was posted on Spenard Road did not contain the words "exit" or "ramp" or any like term which might have designated that it was applicable to McRae Road or any other side street. It follows that the sign did not govern McRae Road. The maximum speed limit at the point of the accident was therefore 20 mph. The court thus erred in refusing to instruct the jury that the speed limit at the point of the accident was 20 mph.

In my view, the fact that the sign was posted at a point where the right lane of west bound traffic on Spenard Road was a right turn only lane is not important. Multilane streets, such as Spenard Road, often have right or left turn only lanes, but it cannot be reasonably supposed that speed limit signs which, as in this case, are posted at periodic intervals along such streets govern the speed of traffic which has left the posted streets.

I would not characterize the location of the speed limit sign as "immediately prior" to the McRae Road turn-off. (Majority Opinion at page 1123.) The sign was located on Spenard Road more than 250 feet east of McRae Road. It was, indeed, east of another side street, Woodland Drive, which intersected with Spenard Road from the north at a point between McRae Road and the sign.

1. This is applicable in Alaska. AS 28.01.010(g). The signs are set forth in subsection IIC–36 of

the Manual.